WILLIAM BRACKEN vs. JAMES A. WELLS et al.— Appeal from Gonzales County.

A court cannot issue a *mandamus* to compel a public officer to perform an act which is not clearly prescribed by law. [*Ante*, 51.]

A *mandamus* ought not to be awarded when there is a substantial defect in the proof of the plaintiff's right, notwithstanding the officer may manifest a willingness to obey the mandate; and especially ought it not to be done when the interests of a third party are involved.

The printed book of certificates recommended by the board of investigating commissioners, if published by authority, may be evidence for some purposes, but does not furnish the proof on which a surveyor is required to act. [7 Tex. 25.]

The statute does not direct that applications for *mandamus* shall be sustained by oath, but upon general principles they ought to be so verified. [4 Tex. 393; 10 Tex. 375.]

This is an application for a *mandamus* to compel the surveyor of Gonzales county to survey for the appellee a certain tract of

land which he designates in his petition, and which he alleges he selected and pointed out to said surveyor on the 15th of February, 1838, to be surveyed under and by virtue of a certificate issued to him on the 18th of January, 1838, by the board of land commissioners of Fayette county, and that the surveyor refuses to make the survey, assigning as his reason therefor that the land had been surveyed for one William Bracken. He alleges that the survey for Bracken was fraudulent and void, as being made upon land previously appropriated; prays that Bracken and the county surveyor, Swift, may both be made parties defendant; that the survey for Bracken be decreed to be null and void, and that a *mandamus* issue commanding the surveyor to survey the land for himself.

At the October term, 1841, Swift answered by saying "he is ready and willing to obey the *mandamus* in all its terms and conditions, for which he prays to be allowed time, and upon his compliance and return of the field notes, to be discharged and exonerated from the said cause with costs." At the March term, 1844, Bracken appeared by counsel and excepted to the petition because it was not sworn to, and because the plaintiff had given no bond for damages and costs; and at the fall term, 1845, he filed an answer denying generally the allegations in the petition. The cause was tried at the same term. The exception was overruled; the jury found a verdict for the plaintiff, and a decree was thereupon entered, annulling the survey and field notes made for Bracken, and ordering a peremptory *mandamus* to issue to the surveyor, as prayed. There was a motion for a new trial, which being overruled, the defendant Bracken appealed.

From the statement of facts sent up in the transcript, it appears that the only evidence submitted to the jury was the original certificate granted by the board of land commissioners of Fayette county to the plaintiff, and the certificate of the surveyor of his location and entry of the land in 1838. The plaintiff offered to read in evidence a printed copy of the report of the board of investigating commissioners, to show that his certificate had been recommended for patent; but this

being objected to, it was ruled out by the court, and the plaintiff excepted.

NEILL and LEWIS for appellant.

J. W. ROBINSON and GILLESPIE for appellee.

Opinion of the court by Chief Justice HEMPHILL.

In this case the judgment of the court below must be reversed. The statute prohibits surveys on certificates for headrights unless they are certified by the clerk of the county court where the certificates were issued or are proposed to be located, or by the commissioner of the general land office, as having been reported by the commissioners appointed to detect fraudulent land certificates, etc. And any survey made contrary to the intent and meaning of the act is declared to be null and void. [Laws of 1840, p. 161.]

A court cannot issue a *mandamus* to compel a public officer to perform an act which is not clearly prescribed by law, or to compel a surveyor to make a survey upon an evidence of claim, which is prohibited by the law from being received as proof for that purpose. It is true that in this case the county surveyor, in his return, states his willingness to obey the *mandamus* in all its terms and conditions, and prays for time for that purpose, and, upon his compliance, to be discharged and exonerated from costs, etc.

This was in 1841, more than three years after the entry was made, and seems extraordinary willingness to discharge a duty which has been neglected until resort was had to compulsory process. He expresses no opinion as to his own duty in the conflict between the two claimants, and no ground why the survey had not been made. And had a *mandamus nisi* issued, as should have been the case on the filing of the petition, the surveyor would doubtless have obeyed the mandate and rendered a peremptory writ unnecessary. But this was not done, and the survey has not yet been made.

The surveyor appeared in his own person, and perhaps supposed that the only proper return on his part was an averment of his willingness to obey whatever order the court might make in the premises, without the necessity of an attachment issuing

for that purpose. It is a useless labor, however, to attempt to ascertain the meaning of the respondent in an answer which advances not the semblance of defense, excuse or reason why the duty which he is so ready to perform had been hitherto neglected. And as exoneration from costs seems to be one of the principal objects of the respondent, it may be well to intimate that, on the award of the writ, the liability of the officer for costs could scarcely be avoided on such showing as is made in this answer. But however defective and insufficient may be the return of the officer, and whatever willingness may be manifested to perform the required act, yet, if it be not done, the compulsory authority of the court cannot be obtained for that purpose, if the act, when done, would probably expose the officer to a suit; and especially when the penalty of the act would be dismission from his office, and a fine of, perhaps, some thousands of dollars.

How far the defect in setting out the title of the applicant may be cured by the virtual or express admission of the return, and a reliance upon some other objection (though none is made in this case), need not be discussed until the point be argued or further considered; but where there is a substantial defect in the proof of the plaintiff's right, and especially where the interests of a third party are involved, the writ ought not to be awarded, whatever willingness of obedience may be manifested by the officer. [Regina *vs.* Powell, 1 A. & E. N. S. p. 360; 41 vol. C. L. Reports, p. 578.]

The statute directs in precise terms the evidence to authorize a survey upon certificates. This must be produced on application for a survey, whether made to the officer, or to a court to compel the act to be done. The printed book of certificates, if published by authority (and which was attempted to be introduced on the trial), may be evidence for some purposes, but does not furnish the proof on which the surveyor is required to act. If this book be the notification which the commissioner of the general land office was (under the second section of an act supplementary to an act, prohibiting, etc., p. 63, Laws of 1840–41) required to transmit to the county surveyors of each county,

of the certificates approved by the investigating board, yet it would not furnish the particular evidence on which the surveys were required to be made. The first section of the said supplementary act virtually renewed, or gave additional sanction to the original law, by suspending its operation, for a limited period, in some of the counties, and declaring that surveyors making surveys after that period, without the required certificate, should suffer the penalties of the law.

There was no error, then, in the decision of the court excluding the book, if it were offered for the purpose of showing that the *mandamus* could be rightly awarded.

The surveyors may, possibly, have in practice neglected the mandate requiring specific certificates before surveys are made, and this may not be noticed in the general land office, as the commissioner, in issuing the patent, acts on different evidence from the surveyors, viz.: the reports of the investigating commissioners; but when the surveyor requires the certificate, or judicial action is invoked, the evidence which the law directs must be produced before that power is exerted. There was no evidence that the certificate had been reported as a genuine and legal claim, and the *mandamus* was, therefore, improvidently awarded. The record is somewhat confused, and some links are wanting to a continuous narrative of the proceedings from the inception of the suit to judgment. Much stress was placed on the fact that the original petition was not verified by affidavit; and an imaginary advantage was supposed to have been acquired by the verification of the answer. The statute referred to, in relation to injunctions, does not direct applications for *mandamuses* to be sustained by oath; but, on general principles, they ought to be so verified. [See text books for authority.]

An objection is taken to the want of power in the commissioners to issue the certificate before the first Thursday in February, 1838. In this construction, could the question be regarded as an open one, I feel inclined to concur with the appellant. The obvious meaning of the law is, that the commissioners should, before that time, restrict their authority to the receiving of applications and hearing testimony in their sup-

port. But the practical construction is understood to have been otherwise, and these certificates have been recommended for patent by the officers appointed to examine the validity of claims on the government. The safe ground to assume would, perhaps, be found in considering all certificates issued before the first Thursday in February as bearing date on that day, and this would not permit them to have any undue preference over certificates issued in conformity with a correct construction of the statute. This certificate was not located until eight or ten days, at least, after the first Thursday in February, and derived no advantage from its being issued in January; and the defendant, Bracken, has no just cause of complaint on this ground, so far as the facts can be gleaned from the record.

The judgment of the court below is reversed, and a new trial awarded.