SULLIVAN *v.* JOHNSON, superintendent.

No. 13091. MARCH 14, 1940.

782

784

*William G. McRae,* for plaintiff.

*J. C. Savage, C. S. Winn, J. C. Murphy,* and *Edwin L. Sterne,* for defendant.

BELL, Justice. ■ We do not deem it necessary to pass upon every question presented by the assignments of error in this case. The plaintiff, as an electrical engineer, applied to the defendant for a permit to do specified electrical work. The permit was refused because the defendant had not stood an examination for license as master electrician, as required by an ordinance of the city, and such ground of refusal seems to be the only matter in which the plaintiff is now concerned. Accordingly, only those provisions of the ordinance relating to examination are proper matters for consideration in this case. The judge held that section 35, providing for appeal from an order of the superintendent to the electric-light committee, has reference only to matters covered by preceding portions of the ordinance, and does not apply to the matter of examination as dealt with in subsequent sections. This conclusion seems to be correct, at least so far as the question of examination is concerned. This is true for the reason that section 48 provides for a different kind of appeal in case of examination, and appears to be exhaustive as related to that subject. It is provided by this section that if the applicant fails to make a passing grade of 70% on examination given to him by the examining board, he may appeal to the superintendent, who shall regrade the examination, and such regrading shall be final. If section 35 should be applied to refusal of a permit upon the ground that no examination has been taken, the plaintiff would be concluded here for his failure to prosecute an appeal in accordance with this section, unless the section be invalid as contended. Compare *City Council of Augusta* v. *Loftis,* 156 *Ga.* 77 (118 S. E. 666); *Loftis Plumbing & Heating Co.* v. *Quarles,* 188 *Ga.* 404 (3 S. E. 2d, 725). The section is attacked upon the ground that it would authorize the electric-light committee to exercise an unbridled or arbitrary discretion. Whether it might be subject to this criticism, or should be held valid as con-

templating only an impartial conclusion based upon considerations pertinent to the order from which appeal is taken (*Cutsinger* v. *Atlanta*, 142 *Ga.* 555 (2), 83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280), we are satisfied that the stated provision for appeal is not applicable, as in this case, to refusal of a permit on the ground that the petitioner had not stood an examination.

■ Section 49 of the ordinance provided as follows: "Any person who has heretofore taken and passed the examination given by the electrical examining board under prior ordinances, and who now holds a certificate by virtue thereof, shall not be required to take a further examination, but shall be entitled to a certificate as a master electrician upon payment of the annual license fee as hereinafter set out, provided that his present certificate is still in effect at the time he applies for a certificate as a master electrician." The plaintiff assailed this section upon the ground that it denies to him equal protection of the law, in violation of the 14th amendment, in that it permits the granting of certificates to persons who may have passed examinations under previous ordinances and who hold certificates thereunder, "notwithstanding the fact that all the prior ordinances of the City of Atlanta providing for an examination as a condition precedent to the granting of a certificate as an electrical contractor were declared and held to be unconstitutional, unreasonable, null and void as being discriminatory against this petitioner, and the granting of a preference to such persons as were allowed a favorite status under such prior ordinances over petitioner in the ordinance which is herein challenged is an unfair, unconstitutional, and unreasonable discrimination against petitioner, and denies your petitioner the equal protection of the laws." We do not here take judicial cognizance of the previous ordinances, or of former adjudications regarding them. These were matters for proof. *Ellis* v. *First National Bank of Atlanta*, 182 *Ga.* 641 (2) (186 S. E. 813); *Laurens County Board of Education* v. *Stanley*, 187 *Ga.* 389, 391 (200 S. E. 294). But if the allegations as to such former adjudications are true, and they appear to have been taken as true upon the trial, section 49 would necessarily constitute an unlawful exemption from sections 44, 45, 46, 47, 48, and 51, relating to examination as condition precedent to license as master electrician, and would render these latter sections themselves discriminatory and invalid, as contended.

■

An ordinance which has been duly adjudicated to be unconstitutional should thenceforth be treated as wholly void and inoperative for any purpose. *Green* v. *Hutchinson*, 128 *Ga.* 379 (2) (57 S. E. 353) ; *Southeastern Greyhound Lines Inc.* v. *Atlanta*, 177 *Ga.* 181, 184 (170 S. E. 43) ; *Fuller* v. *Yeller*, 40 *Ga. App.* 58 (2), 60 (148 S. E. 751).

■ The provisions as to examination apply only to those desiring a certificate as master electrician, but the manner in which these provisions operate upon the plaintiff is shown by section 51, which reads as follows: "Every electrical contractor before performing any work or doing any job of electrical installation, construction or repair shall apply for and obtain a permit from the superintendent of electrical affairs, authorizing him to do such work. No such permit shall be issued unless and until said electrical contractor is himself a licensed master electrician or has in his employ and in charge of all his electrical work one who is a licensed master electrician." It is thus seen that any one desiring a permit to do electrical work as a contractor must himself hold a license as master electrician, or have in his employment and in charge of all of his electrical work one who is a master electrician. More than this, it is provided in section 53: "Each person holding a master electrician's certificate shall register with the superintendent of electrical affairs the person, firm, or corporation with whom he is connected, and shall not be employed by more than one person, firm, or corporation at the same time. No licensed master electrician shall permit the use of his name as an employee by an electrical contractor, unless and until he is a bona fide employee of such electrical contractor. If any master electrician severs his connection with the electrical contractor by whom he is employed he shall immediately notify the superintendent of electrical affairs in writing of same." The plaintiff alleged that these, among other provisions, unreasonably interfere with his right to labor and earn a livelihood, and that they discriminate against individuals like the plaintiff in favor of firms and corporations, both as to the manner and amount of taxation and in regard to examination, imposing unequal burdens upon persons of the same class, and violating both the equal-protection and due-process clauses of the State and Federal constitutions. The petition further alleged in effect that the ordinance does not promote the public interest, but tends

to monopoly, and that it deprives the plaintiff of his inalienable right to work at his trade as an electrical contractor. We are of the opinion that the provisions of sections 51 and 53, as challenged, are invalid for unreasonableness, as applied to the plaintiff, who it appears performs by himself such electrical work as may be entrusted to him. He is not a member of a firm, or connected with a corporation; and no matter what contract, whether great or small, he may be able to obtain, he can not meet the requirements of the city ordinance unless he has in his employment and in charge of all his electrical work one who is a licensed master electrician, the plaintiff himself not having stood examination and obtained a license.

As was stated in City of Tucson v. Stewart, 45 Ariz. 36 (40 Pac. 2d, 72, 96 A. L. R. 1493) : "Plaintiff and those others in his situation must employ a licensed supervising electrician to superintend every electrical contract they may secure. It is not shown what the yearly income of these small contractors is, or what wage the licensed supervising electrician receives, but it is most probable the small contractor would have nothing left for his labor and trouble after paying a supervising electrician." Regulations similar to those here involved were considered in that case, in respect of which the court said: "Under the ordinance every holder of a certificate of registration is authorized to contract electrical wiring and installation; but whether it be a person, firm, or corporation, the wiring and installation must be under the supervision of a supervising electrician, designated as such in each application for a permit to do construction, and such supervising electrician must be either the holder of a certificate of registration or in the employment of a holder. It is thus seen that no person may be a supervising electrician unless licensed, and to that extent all registered contractors are in the same category, whether such contractors be persons, firms or corporations. But does this fact dispense with the discrimination intended to be avoided? Where the contractor is an individual doing all his work, or practically all of it, it of necessity requires him to be a licensed electrician; but if the contractor is a firm or corporation, it may operate on a license to a member or employee of the firm, or an officer or employee of the corporation. In other words, in the case of a firm or corporation, if the work is supervised by a member of the firm or by an officer

of the corporation, only such supervisor must be licensed. There is no restriction on unlicensed partners or unlicensed officers or employees, however numerous, doing work in the performance of the contract. Or, if none of the partners is qualified to obtain a license, the firm may employ a licensed electrician to supervise the work, while the unlicensed partners do the actual construction under his supervision. All the officers and employees of a corporation, when the latter employs a licensed electrician to supervise the work, may likewise do the actual construction. In the case of the individual contractor, there are no partners or officers, as in partnerships or corporations, to become qualified electricians by his securing a supervising electrician's license. His working force is not enlarged thereby." We do not quite follow the reasoning of the Arizona court so far as it relates to discrimination, since the ordinance there, as here, would seem to operate alike upon all persons engaged in electrical work; that is to say, whether the contractor be an individual, a firm, or a corporation, the requirements are the same as to supervision and who shall do it. What was said in that case, however, tends to show that the present ordinance is at least unreasonable, in that it imposes an undue burden upon the plaintiff and others in like situation, by requiring every such contractor not only to have his work performed under the supervision of a licensed master electrician, but to keep in his employment one such electrician, *who shall be employed exclusively by him.*

Note, in this connection, the provisions of section 53, to the effect that each person holding a master's certificate shall register the person, firm, or corporation with whom or with which he is connected, and shall not be employed by more than one person, firm, or corporation at the same time. Under this section, no person may engage in the business of electrical contractor unless he shall first gather unto himself a master electrician, for his own exclusive service and employment, regardless of the expense, and of the volume of business which may be done by him. We find no fault with the provision that all installation, construction, or repair shall be supervised by a master electrician, that is, by one who has passed an examination as to his knowledge and proficiency in such matters; but it does seem to us that supervision could be fairly and sufficiently enforced without requiring every contractor to keep in his regular and *exclusive* employment a licensed master electrician.

Such an employee might become a luxury instead of a necessity, and what if there should not be a sufficient number that each contractor might have one? The requirement obviously tends to monopoly in favor of the larger firms and corporations and master electricians, to the hurt, if not the annihilation, of small contractors, with no reasonable basis for such requirement, as a general welfare measure. Monopolies are denounced by the constitution and laws of this State; and although the petition does not allege that the ordinance in question is unconstitutional upon this ground, the allegations as to such may be considered on the question of reasonableness. We can not escape the conclusion that the ordinance is unreasonable and void as placing an undue burden upon the plaintiff's right to engage in the business of electrical contractor. In this view, it is unnecessary to declare whether it violates the constitutional principle of due process. In support of the conclusion reached, see *Henry* v. *Campbell*, 133 *Ga.* 882 (67 S. E. 390, 27 L. R. A. (N. S.) 283, 18 Ann. Cas. 178); *Gregory* v. *Quarles*, 172 *Ga.* 45 (157 S. E. 306); *Southeastern Electric Co.* v. *Atlanta*, 179 *Ga.* 514 (176 S. E. 400); *Dewell* v. *Quarles*, 180 *Ga.* 864 (181 S. E. 159); *Richardson* v. *Coker*, 188 *Ga.* 170 (3 S. E. 2d, 636); State ex rel. Winkler *v.* Benzenberg, 101 Wis. 172 (76 N. W. 345); Vicksburg *v.* Mullane, 106 Miss. 199 (63 So. 412, 50 L. R. A. (N. S.) 421); Tucson *v.* Stewart, supra; Aaroe *v.* Crosby, 48 Cal. App. 422 (192 Pac. 97). Contrast Caven *v.* Coleman (Tex.), 96 S. W. 774, Milwaukee *v.* Rissling, 184 Wis. 517 (199 N. W. 61).

The plaintiff did not allege that the entire ordinance was void, nor did he challenge the provisions relating to permit, except in reference to examination. According to *Richardson* v. *Coker*, supra, suit for the writ of mandamus was the proper remedy, and under the facts of the record the judge erred in refusing a mandamus absolute.

*Judgment reversed. All the Justices concur.*